UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LISHAN WANG,

      Plaintiff,

**MEMORANDUM & ORDER**

**09-CV-3236 (NGG) (SMG)**

-against-

KINGSBROOK JEWISH MEDICAL CENTER,

      Defendant.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

  Before he was fired in 2008, Plaintiff Lishan Wang worked as a medical resident for Defendant Kingsbrook Jewish Medical Center. (Compl. (Dkt. 1) ¶¶ 10, 40.) After he was fired, he initiated this action, claiming that his termination was motivated by bias against people of Chinese descent or origin and against people perceived as being mentally ill. (See id. ¶¶ 13-40.) In particular, Plaintiff alleges that he was fired following a "heated discussion" with his chief resident and direct supervisor, Dr. Vajinder Toor, in which Toor "accus[ed] [Plaintiff] of ignoring pages and calls from hospital staff while on duty" and "accused [Plaintiff] of threatening [Toor's] safety." (Id. ¶¶ 36-37; see id. ¶¶ 38-40.)

  On April 26, 2010, while this case was pending before Judge John Gleeson,[1] Plaintiff drove to Toor's home in Connecticut, fatally shot Toor, and fired shots at Toor's pregnant wife. (See Apr. 26, 2010 Police Report ("Police Report") (Dkt. 87-3) at 4-9; June 9, 2017 Plea Hr'g Tr. ("Plea Hr'g Tr.") (Dkt. 98-10) at 9:13-12:19; Sept. 22, 2017 Sentencing Hr'g Tr. ("Sentencing Tr.") (Dkt. 98-11) at 8:17-18:22.) This case was stayed pending the resolution of the criminal case against Plaintiff in Connecticut state court. (May 6, 2010 Min. Entry; Apr. 28,

---

[1] Judge Gleeson resigned in 2016, and this case was reassigned to the undersigned. (Mar. 10, 2016 Order Reassigning Case.)

1

2011 Min. Entry; Nov. 16, 2012 Order; Dec. 1, 2014 Order; Apr. 2, 2015 Order.) Plaintiff ultimately pleaded nolo contendere to first-degree manslaughter with a firearm and other charges (Plea Hr'g Tr. at 30:7-31:1) and was sentenced to 32 years in prison (Sentencing Tr. at 35:4-7).

Notwithstanding his plea and current incarceration, and now proceeding pro se, Plaintiff wishes to continue litigating this case. (Pl. Mar. 12, 2018 Ltr. (Dkt. 82) at 1; Pl. Resp. in Opp'n to Mot. to Dismiss ("Opp'n") (Dkt. 98-14) at 1.) Defendant now moves to dismiss Plaintiff's complaint with prejudice under the court's inherent authority to sanction abusive litigation tactics—namely, "the heinous killing of an essential defense witness during the pendency of the litigation." (Def. Mem. in Supp. of Mot. to Dismiss (Dkt. 98-1) at 1 ("Mem."); see Def. Mot. to Dismiss ("Mot.") (Dkt. 98).) Defendant's motion is GRANTED for the following reasons.

I. BACKGROUND

A. Plaintiff's Allegations

Plaintiff began as a first-year medical resident in Defendant's Internal Medicine residency program on July 1, 2006. (Compl. ¶ 13.) He alleges that he experienced hostile treatment at the hands of his supervisors, other doctors, and hospital staff over the next two years, culminating in his termination on July 25, 2008. (Id. ¶¶ 15-40.) He identifies Toor as one of the persons primarily responsible for the hostile treatment. Specifically, he alleges that Toor Toor: (i) "single[d] out two Chinese residents and humiliate[d] them verbally in front of all the other residents during a morning conference" (id. ¶ 20); (ii) inappropriately interfered in a medical examination of Plaintiff after Plaintiff complained that he felt ill (id. ¶¶ 29-31); (iii) unfairly accused Plaintiff of ignoring calls and pages from hospital staff while on duty (id. ¶ 36); and (iv) unfairly accused Plaintiff of threatening Toor's safety during a heated discussion, which resulted in Plaintiff being suspended and ultimately terminated (id. ¶ 37- 40). After his

termination, Plaintiff brought this action on July 28, 2009. (Compl.) He raises claims under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; and various state and municipal laws. (Compl. ¶¶ 41-89.)

### B. Criminal Case Against Plaintiff

On April 26, 2010, Plaintiff drove to Toor's home in Connecticut, fatally shot Toor, and fired shots at Toor's pregnant wife. (See Police Report at 4-9; Plea Hr'g Tr. at 9:13-12:19; Sentencing Tr. at 8:17-18:22.) Plaintiff was immediately arrested and charged in Connecticut state court with Toor's murder, the attempted murder of Toor's wife, and several other offenses. (See Police Report at 4-9.) In a search of Plaintiff's vehicle, the police found three handguns, over 1,000 rounds of ammunition, Toor's photo, printouts with the names of two other Kingsbrook employees identified in the complaint in this case, and a letter that Plaintiff had submitted to Magistrate Judge Steven M. Gold regarding this case. (Id. at 7-8; Apr. 20, 2011 Hr'g Tr. (Dkt. 98-8) at 108:12-119:8.) Judge Gold stayed this case pending the resolution of Plaintiff's criminal case. (May 6, 2010 Min. Entry; Apr. 28, 2011 Min. Entry; Nov. 16, 2012 Order; Dec. 1, 2014 Order; Apr. 2, 2015 Order.)

On April 20 and April 25, 2011, Judge Roland Fasano, who oversaw Plaintiff's criminal case at the time, held a probable cause hearing. (Apr. 20, 2011 Hr'g Tr.; Apr. 25, 2011 Hr'g Tr. (Dkt. 98-9).) After Plaintiff and the State of Connecticut presented evidence and made arguments, Judge Fasano found that there was probable cause to believe Plaintiff had murdered Toor. (Apr. 25, 2011 Hr'g Tr. at 31:4-32:8.) After six years of extensive motion practice (see Plea Hr'g Tr. at 5:13-6:27), Plaintiff entered a plea of nolo contendere to manslaughter with a

3

firearm and several other charges on June 9, 2017 before Judge Patrick J. Clifford (id. at 30:7-31:1).

At Plaintiff's sentencing hearing on September 22, 2017, after Plaintiff addressed the court, Judge Clifford stated the following:

> The crime occurred April 26 of 2010, we're, what, seven and a half years later and it's been a very frustrating, torturous case for me and the lawyers and I'm sure yourself. But, if it was frustrating for me, what it must have been for this victim's family on a case where the guilt, with all due respect, was overwhelming, overwhelming guilt . . .
>
> [Y]ou're a disturbed person, that's probably what led to your termination, because what you've exhibited before me, if you were doing that in your residency to become a doctor or as a doctor, certainly in a so-called respectable career, I could see why they let you go.
>
> But then once you're terminated and your mental instability and your inability to accept it, turned into revenge. You're still talking today about being improperly terminated. You killed somebody. People lose their jobs, okay. You lost. It doesn't mean you go out and you kill somebody and maybe lead to two other people you're going to attempt to kill.
>
> You've shown no remorse, even in your own statements, even what you had your lawyer address today, yeah, I don't see any remorse for this poor family.
>
> This was a premeditated, cowardly killing of a defenseless, innocent person, a medical doctor heading out to go to work, with his wife being shot at; that's what this was, senseless, heinous, there aren't enough words to cover what you've done.
>
> And maybe I've been holding this up for the last five years or so since I've been dealing with you, but I can't muster up any mercy or compassion for you Mr. Wang. You've shattered a good family who's going to suffer and are suffering for the rest of their life.

(Sentencing Tr. at 29:16-29:19; 32:5-26.) Judge Clifford then sentenced Plaintiff to 32 years in prison. (Id. at 35:4-7.)

4

After his sentencing hearing, Plaintiff informed this court that he wanted to proceed with this case. (Pl. Feb. 20, 2018 Letter (Dkt. 80).) Defendant then submitted the instant motion. (Mot.)

## II.  LEGAL STANDARD

Federal courts have an "inherent power to levy sanctions in response to abusive litigation practices." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 135 (2d Cir. 1998) (citation omitted). This inherent power derives from the "sage acknowledgment that courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" Id. at 136 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). The court's inherent authority "reaches both conduct before the court and that beyond the court's confines." Chambers, 501 U.S. at 44.

"Outright dismissal of a lawsuit is within the court's discretion." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (alterations adopted) (quoting Chambers, 501 U.S. at 45). "Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." Id. "However, because dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." Id. (citations and quotation marks omitted); see Koehl v. Bernstein, 740 F.3d 860, 862 (2d Cir. 2014) (per curiam) (stating that dismissal with prejudice is a "harsh remedy to be used only in extreme situations" (citation omitted)). "When a litigant is pro se, there is an even greater degree of solicitude to be granted that litigant." Jenkins v. Charles, No. 13-CV-3405 (DLC), 2018 WL 626340, at *5 (S.D.N.Y. Jan. 30, 2018) (citing Koehl, 740 F.3d at 862).

## III. DISCUSSION

The court agrees with Defendant that, although dismissal with prejudice is "reserved for extreme circumstances, one cannot imagine a more extreme circumstance than the one presented here." (Mem. at 7.) The evidence overwhelmingly indicates that Plaintiff killed Toor, an essential defense witness in this case, after commencing this action and as revenge for the events underlying Plaintiff's allegations. Courts in this circuit have frequently exercised their inherent power to dismiss cases with prejudice for far less heinous conduct. See, e.g., Jenkins, 2018 WL 626340, at *4 (dismissing case with prejudice as sanction for plaintiff's use of offensive, abusive, and insulting language toward the Court); Koehl v. Bernstein, No. 10-CV-3808 (SHS) (GWG), 2012 WL 2135382, at *8 (S.D.N.Y. June 13, 2012) (same), R&R adopted, 2012 WL 3264543 (S.D.N.Y. Aug. 10, 2012), aff'd, 740 F.3d 860 (2d Cir. 2014); Bellet v. City of Buffalo, No. 03-CV-00027, 2011 WL 6934824, at *3 (W.D.N.Y. Dec. 30, 2011) (same); see also Shangold v. Walt Disney Co., 275 F. App'x 72, 73-74 (2d Cir. 2008) (affirming district court's dismissal of complaint as a sanction pursuant to its inherent powers where the plaintiffs made "repeated false statements" to the court "in order to bolster their claims"). Plaintiff seeks to distinguish those cases because, unlike the plaintiffs therein, he has not disrespected this court in particular. (Opp'n at 3.) But the relevant standard is whether "there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." West, 167 F.3d at 779 (2d Cir. 1999) (citation omitted). Killing a key defense witness constitutes bad faith.

Plaintiff's plea of nolo contendere in his criminal case—rather than guilty—does not deter the court from dismissing this case. In the court's view, Federal Rule of Evidence 410—which states that evidence of a nolo contendere plea is not, "in any civil or criminal proceeding, admissible against the defendant who made the plea," Fed. R. Evid. 410(a)—does not bar the use

6

of such a plea by a civil <u>defendant</u> seeking to dismiss a case because the civil <u>plaintiff</u> was charged with killing a key defense witness. As the Tenth Circuit has stated,

> There are two primary reasons behind holding nolo pleas inadmissible, and neither rationale would be furthered by [preventing an employer-defendant from using such a plea to show why it fired a plaintiff-employee.] First, although a plea of nolo contendere has the same <u>legal</u> effect as a guilty plea, it is not a <u>factual</u> admission to the underlying crime. A defendant who otherwise would plead guilty may choose to take a nolo plea to prevent the plea from being used as an admission in a subsequent civil action. A second reason for the exclusion of nolo pleas is a desire to encourage compromise resolution of criminal cases. Both of these reasons assume a situation in which the criminal defendant is being sued in a later civil action, and the plea is offered as proof of guilt.

<u>Rose v. Uniroyal Goodrich Tire Co.</u>, 219 F.3d 1216, 1220 (10th Cir. 2000) (alterations adopted) (citations and quotation marks omitted). Neither of the two primary reasons behind Rule 410 support exclusion of Plaintiff's <u>nolo contendere</u> plea here. Similarly, courts sometimes permit civil defendants to use a civil plaintiff's <u>nolo contendere</u> plea as evidence against claims because, in such a situation, "use of the [] plea is not 'against the defendant' within the meaning of Fed. R. Evid. 410," but rather, "'for' the benefit of the 'new' civil defendants."[2] <u>Id.</u> (quoting <u>Walker v. Schaeffer</u>, 854 F.2d 138, 143 (6th Cir. 1988)); <u>Walker</u>, 854 F.2d at 143 ("We find a material difference between using the nolo contendere plea to subject a former criminal defendant to subsequent civil or criminal liability and using the plea as a defense against those submitting a plea interpreted to be an admission which would preclude liability."); <u>Behm v. Campbell</u>, 925 So. 2d 1070, 1075 (Fla. Dist. Ct. App. 2006) ("It does not appear to us that [Florida's analogue to Rule 410] was intended to shield a defendant from his own actions in entering a no contest plea in a criminal setting and then repudiating that declaration in a civil setting"); <u>USX Corp. v. Penn</u>

---

[2] The Second Circuit does not appear to have ruled on whether civil defendants may use plaintiffs' <u>no contendere</u> pleas as evidence.

7

Cent. Corp., 738 N.E.2d 13, 19 (Ohio Ct. App. 2000) (stating that Ohio's Rule 410 analogue does not prohibit the use of a no-contest plea "as a <u>defense</u> against a claim by a former criminal defendant"), <u>cause dismissed sub nom. USX Corp. v. Penn Cent. Corp.</u>, 736 N.E.2d 24 (Ohio 2000); <u>Delong v. State ex rel. Oklahoma Dep't of Pub. Safety</u>, 956 P.2d 937, 938 (Okla. Ct. App. 1998) (observing that the purpose of Oklahoma's Rule 410 analogue is to "proscribe 'offensive' use of a [nolo contendere] plea . . . , not to proscribe 'defensive' use of the admission against the criminal defendant in a case where the criminal defendant sought to recover damages . . . ."). But cf. <u>Sharif v. Picone</u>, 740 F.3d 263, 269 (holding that a <u>nolo contendere</u> plea cannot be used as evidence against an excessive-force claim because such a claim can stand without challenging any element of the plaintiff's criminal conviction). If there is ever a case where a court should consider a <u>nolo contendere</u> plea, it is one where the civil plaintiff entered such a plea in connection with charges that he killed a key defense witness as revenge for the events underlying his allegations.

In any event, the court need not rely on Plaintiff's <u>nolo contendere</u> plea in exercising its inherent authority to dismiss his claim. There are independent bases for concluding that Plaintiff likely killed Toor. Judge Fasano found, after an adversarial hearing, that there was probable cause to believe Plaintiff was guilty. (Apr. 25, 2011 Hr'g Tr. at 31:4-32:8) Judge Clifford observed at Plaintiff's sentencing hearing that the evidence of his guilt was "overwhelming." (Sentencing Hr'g Tr. at 29:18-19.) Moreover, Plaintiff does not appear to deny in his briefing that he killed Toor. Instead, he characterizes his <u>nolo contendere</u> plea as his effort to "tak[e] his proper share of responsibility" for his actions and states that his termination "triggered a domino of events which ended at the death of Dr. Toor." (Opp'n at 1.) While Plaintiff also claims that his plea was made under the influence of forced medication (Opp'n at 1), Judge Clifford found

that Plaintiff entered his plea voluntarily after questioning him and his counsel thoroughly about his medication and whether he understood the ramifications of his plea (Plea Hr'g Tr. 15:20-31:1).

Plaintiff does not propose, and the court is not aware of, any "alternative, less drastic" sanctions that may be appropriate in a situation where a civil plaintiff killed a key defense witness as revenge for the events underlying his allegations. West, 167 F.3d at 779 ("[B]ecause dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." (citations and quotation marks omitted)). Therefore, dismissal of this case with prejudice is appropriate. Id.

## IV. CONCLUSION

Defendant's (Dkt. 98) motion to dismiss Plaintiff's complaint with prejudice under the court's inherent authority to sanction abusive litigation tactics is GRANTED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
March 31, 2019

NICHOLAS G. GARAUFIS
United States District Judge